UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DAVID PARSONS,<br>　　　　　Plaintiff,<br>v.<br>PAIGE, *et al.*,<br>　　　　　Defendants.<br>_____/ | Case No. 24-10247<br><br>Judith E. Levy<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

# REPORT AND RECOMMENDATION ON DEFENDANT SPAULDING'S MOTION FOR SUMMARY JUDGMENT (ECF No. 20)

I.      PROCEDURAL HISTORY

Plaintiff David Parsons filed this civil rights matter, *pro se*, on January 30, 2024, against corrections officers, the Michigan Department of Corrections, and the Macomb Correctional Facility.  (ECF No. 1).  Plaintiff was later appointed pro bono counsel.  (ECF No. 12).  Defendant Spaulding, the only Defendant who has been served and has appeared, moved for summary judgment because Plaintiff did not administratively exhaust his claims against Spaulding.  (ECF No. 20).

This case was referred to the undersigned for all pretrial proceedings.  (ECF No. 11).  For the reasons below, the undersigned **RECOMMENDS** that the motion for summary judgment be **GRANTED**.

II.     BACKGROUND

A. <u>Complaint Allegations</u>

On November 15, 2022, Plaintiff asked non-moving Defendant Paige to call healthcare because of chest pains. Paige talked to a nurse and said that inmates ask to go to healthcare after lunch when they have no more "callouts" "to get out of their rooms." (ECF No. 1, PageID.2). Plaintiff told Paige that the comments were disrespectful. Plaintiff said he would file a grievance. Paige then yelled at Plaintiff, who is wheelchair-bound, to stand up. Paige grabbed Plaintiff in a bear hug, picked him up, and "slammed" him to the ground on the side of his face. Paige and Defendant Spaulding rolled Plaintiff over to handcuff him. Spaulding pointed his taser directly at Plaintiff's head in violation of prison policy. Plaintiff was left on the floor "for a significant amount of time before being returned to his wheelchair." (*Id.* at PageID.3).

Plaintiff was taken to segregation where he had a seizure and fell down, his vision blurred and he was seeing black spots. He was taken to Henry Ford Hospital, but his condition persisted. Paige issued a retaliatory misconduct ticket against Plaintiff. The charge was dismissed. (*Id.*).

Plaintiff alleges violations of the First and Eighth Amendments.

B. <u>Instant Motion for Summary Judgment</u>

Spaulding argues that Plaintiff filed one grievance to Step III while at Macomb Correctional Facility ("MRF"), but did not name Spaulding in that

grievance. Thus, the grievance does not exhaust the claim against him. (ECF No. 20, PageID.95-96). In response, Plaintiff asserts that there are issues of material fact as to whether the grievance process was available to Plaintiff. He notes that he was "violently assaulted" by Paige, so a reasonable jury could conclude that the assault and Spaulding's threatening use of a taser "effectively intimidated Plaintiff and rendered the grievance process unavailable." (ECF No. 22, PageID.121). Plaintiff also alleges that he suffered a head injury and blurred vision because of the assault, and has a mental illness, "which may have impaired his ability to promptly file grievances." (*Id.*). Even if the grievance process were available, Plaintiff argues that his grievance against Paige substantially complies with the rules to count as a grievance against Spaulding. Plaintiff contends that by naming Paige and giving the facts and date of the incident, Plaintiff put prison officials on notice about the incident "to investigate the entire use of force, including Spaulding's role." (*Id.* at PageID.122). He contends that his failure to file a timely Step III grievance does not mean the grievance was unexhausted because the grievance was "resolved" at Step II. (*Id.* at PageID.122-23). Finally, Plaintiff insists that additional discovery is needed to obtain his complete grievance file or to depose prison officials about how grievances related to this incident were processed. (*Id.* at PageID.123). There is no evidence attached to Plaintiff's response.

## III. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."

4

*Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

B.  <u>Exhaustion under the PLRA</u>

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S.

5

516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . ."). That said, "the PLRA and Federal Rule of Civil

6

Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* As a result, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

C. <u>Grievance Procedures at MDOC</u>

Pursuant to Policy Directive 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue. (ECF 20-2, PageID.104, at ¶ Q). If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.*). If the inmate is dissatisfied with the Step I disposition, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form. (*Id.* at PageID.106, ¶ DD). Similarly, if the inmate is dissatisfied with the Step II

7

response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance. (*Id.* at PageID.107, ¶ HH). The matter is fully exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

D. Analysis

Plaintiff did not exhaust his claim against Spaulding. At Step I of the grievance Plaintiff filed about what occurred on November 15, 2022, he never mentioned Spaulding's involvement. He wrote about hearing Paige's conversation with a nurse that was inappropriate. He "spoke up to" Paige about it. Paige asked if he had a problem, to which Plaintiff responded that he did and that he would "write him up." (ECF No. 20-3, PageID.116). Paige then approached Plaintiff, picked him up by the arms, and pinned and slammed his head on the ground. The incident was caught on camera. He said he went to the hospital for his injuries. (*Id.*).

As noted above, grievances must contain the dates, times, places, and *names* of all those involved. Failure to name an individual may not necessarily render exhaustion inadequate. But exhaustion is inadequate "as to a particular defendant not identified in the grievance if the plaintiff specifically identifies other defendants by name and nothing in the grievance would put the unnamed

8

defendants on notice." *Kensu v. Rapelje*, 2013 WL 1774637, at *4 (E.D. Mich. Apr. 25, 2013) (internal citations omitted) (emphasis added). Here, Spaulding was not named in the grievance nor put on notice that his pointing a taser at Plaintiff was an issue Plaintiff intended to grieve. "In some circumstances where the MDOC does not reject a grievance for failing to name the culprits, this argument can be deemed waived. However, in this case the grievance *did* identify a culprit ([Paige]), meaning the MDOC had no reason to reject the grievance for this reason." *Page v. Nenrod*, 2023 WL 9065217, at *4 (E.D. Mich. Nov. 28, 2023), *report and recommendation adopted*, 2024 WL 37928 (E.D. Mich. Jan. 3, 2024) (emphasis in original). The claim against Spaulding is unexhausted.

Plaintiff asserts that the grievance process was unavailable because of the injuries he sustained from Paige's alleged assault on November 15, 2022, and because of his mental illness. Administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643-33 (2016). "[T]he Sixth Circuit has suggested, but has not decided, that a prisoner's serious mental illness may render a prison's administrative grievance process unavailable to him." *Cromer v. Washington*, 2023 WL 6829849, at *2 (W.D. Mich. Oct. 17, 2023) (citing *Coopwood v. Wayne Cnty.*, 74 F.4th 416, 424 (6th Cir. 2023)).

Without any evidentiary support, such as an affidavit from Plaintiff, it is difficult to credit Plaintiff's position considering he filed a grievance about Paige's conduct that day. There is no evidence creating an issue of material fact as to Plaintiff's ability or inability to also name Spaulding in that grievance or to file a separate grievance against Spaulding. So the undersigned concludes that the grievance process was not effectively unavailable to Plaintiff, or at least that there is no question of material fact on the issue.

Plaintiff asserts that he substantially complied with the grievance process because it was rejected as "resolved" at Step II. (*See* ECF No. 20-3, PageID.115). This is an argument better raised against Paige, if Paige were to move for summary judgment on exhaustion, because even if this grievance were procedurally sound through all three steps, it does not cure the failure to name Spaulding and having a taser pointed at Plaintiff's head.

Lastly, Plaintiff's call for discovery on exhaustion is not well taken. He would seek to depose prison officials about how they processed Plaintiff's grievance about the November 15th incident and would seek his full grievance file. As to the depositions, it is unclear how deposing officials about processing grievances would have an impact on Plaintiff's failure to exhaust the claim against Spaulding since the issue is that Plaintiff did not name Spaulding in a grievance. As for the grievance file, Plaintiff neither suggests that the grievance attached by

Spaulding is incomplete or insufficient, nor explains or argues that there are other grievances he filed against Spaulding that would raise an issue of material fact on exhaustion. As a result, it is unclear how Plaintiff's entire prison grievance file would alter the conclusion.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant Spaulding's motion for summary judgment (ECF No. 20) be **GRANTED** and that Spaulding be **DISMISSED**.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date:                                s/Curtis Ivy, Jr.
                                     Curtis Ivy, Jr.
                                     United States Magistrate Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on September 26, 2024.

                                     s/Sara Krause
                                     Case Manager
                                     (810) 341-7850